

# F I L E D

**MAY 2 1 2008**

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )

v. )

NORTON HELTON and )
CHARLES WHITE )

)
)
)
)
)
)

No. 06 CR 763

Violations:  Title 18, United States
Code, Sections 2,
157(1) and 1343.

Judge Samuel Der-Yeghiayan
**MAGISTRATE JUDGE KEYS**

**Superseding Indictment**

The SPECIAL MARCH 2007 GRAND JURY charges:

1.      At times material to this indictment:

   a.      Defendant CHARLES WHITE owned and operated Eyes Have Not Seen, Inc. ("EHNS"), located at 800 South Wells Street, Chicago, Illinois, through which defendant WHITE offered homeowners a "mortgage bailout" program that would purportedly prevent them from losing their homes in foreclosure.

   b.      Defendant CHARLES WHITE was an owner of Title Zone L.L.C. ("Title Zone"), which provided escrow and closing services for real estate transactions involving EHNS.

   c.      Defendant NORTON HELTON was an attorney licensed by the state of Illinois who practiced real estate and bankruptcy law and who also owned and operated Diamond Management of Chicago, Inc. ("Diamond Management"), located at 1657 North Halsted Street, Chicago, Illinois, through which defendant HELTON offered homeowners

-1-

a "mortgage bailout" program that would purportedly prevent them from losing their homes in foreclosure.

     d.    In determining whether to provide mortgage financing, lenders reviewed and relied upon prospective borrowers' employment and wage history, financial assets and liabilities, and use of and personal investment in the property to be mortgaged.

     e.    Chapter 7 of the United States Bankruptcy Code (Title 11, United States Code) provided persons ("debtors") with an opportunity to obtain a fresh financial start through the elimination of their debts by paying their creditors a pro rata share of their property.

     f.    A debtor in a Chapter 7 bankruptcy case was required to file under penalty of perjury with the Bankruptcy Court, a petition, supporting schedules, and a statement of financial affairs disclosing, among other information, the debtor's income, debts, property, and transfers of property.

     g.    In the statement of financial affairs, a debtor was required to disclose truthfully information relating to the debtor's transfer of property other than in the ordinary course of the business or the financial affairs of the debtor within one year preceding the commencement of the debtor's bankruptcy case.

     h.    The filing of a Chapter 7 bankruptcy petition created a "bankruptcy estate" that consisted, in part, of all legal and equitable interests of the debtor at the commencement of the debtor's bankruptcy case. The bankruptcy trustee, the United States

Trustee, and a debtor's creditors could seek to have certain property transferred by the debtor prior to the initiation of the debtor's Chapter 7 bankruptcy case returned to the debtor's bankruptcy estate.

      i.    A debtor was required to appear at a "Section 341" meeting of creditors at which the debtor was questioned under oath concerning the debtor's assets and liabilities and the accuracy of the debtor's petition, schedules, and statement of financial affairs.

      2.    Beginning no later than in or about August 2004 and continuing to in or about September 2005, in Chicago, in the Northern District of Illinois, Eastern Division,

NORTON HELTON and
CHARLES WHITE,

defendants herein, together with persons known and unknown to the Grand Jury, devised and intended to devise a scheme to defraud and to obtain money and property from financially distressed homeowners facing foreclosure and mortgage lenders by means of false and fraudulent pretenses, representations and promises, which scheme is further described below.

      3.    It was part of the scheme that defendant CHARLES WHITE, through EHNS, and defendant NORTON HELTON, through Diamond Management, persuaded no less than nine financially distressed homeowners facing foreclosure ("clients") that they could avoid foreclosure by selling their homes to a relative, friend, or a paid third-party investor (collectively, "investors") for whom defendant WHITE and defendant HELTON fraudulently obtained mortgage financing that, in aggregate, exceeded $1,600,000, by submitting and causing to be submitted to mortgage lenders, false and fraudulent mortgage loan applications

-3-

and real estate closing documents, all so that defendant WHITE and defendant HELTON could obtain money derived from the sale of clients' homes. Defendants WHITE and HELTON arranged for no less than $390,000 to be paid to EHNS and Diamond Management from the sale of clients' homes. Defendants WHITE and HELTON then encouraged clients to retain defendant HELTON to file a Chapter 7 bankruptcy case in which the clients concealed their recent real estate sales.

*EHNS's Mortgage Bailout Program*

4.     It was further part of the scheme that defendant CHARLES WHITE caused EHNS representatives to persuade clients to sell their homes to investors by assuring them that the investors would hold their homes while they attempted to eliminate their debt and repair their credit.

5.     It was further part of the scheme that defendant CHARLES WHITE caused EHNS representatives to persuade EHNS's clients that they would be able to live in their homes rent and mortgage free for one year ("the investment period"), after which they would have the right to repurchase their homes, if financially able to do so.

6.     It was further part of the scheme that defendant CHARLES WHITE caused EHNS representatives to recruit individuals to become investors by telling them that they did not have to contribute money to the purchase of property, but, instead, that EHNS would pay them to purchase and hold for one year the property of its clients. EHNS representatives told prospective investors that the only requirement to purchase property as an investor was an

-4-

acceptable credit score.

7.    It was further part of the scheme that defendant WHITE caused EHNS representatives to assure EHNS's clients and investors that EHNS would pay the property's mortgage for the duration of the investment period by withdrawing equity from the homes at the time of sale.

8.    It was further part of the scheme that defendant CHARLES WHITE set the prices at which property would be sold by EHNS's clients to investors so that there would be sufficient proceeds derived from the sale for EHNS to withdraw money from the transaction.

9.    It was further part of the scheme that Defendant WHITE obtained appraisals to be provided to mortgage lenders that would justify mortgage loan applications consistent with the sale prices set by defendant WHITE.

10.    It was further part of the scheme that defendant CHARLES WHITE, through EHNS, withdrew significant amounts of equity from the sale of EHNS's financially distressed clients' homes at the time of sale.

*Fraudulent Mortgage Loan Applications*

11.    It was further part of the scheme that defendant CHARLES WHITE obtained mortgage financing for EHNS's investors, and in doing so, defendant WHITE, using his own name and various aliases, prepared and caused to be submitted to prospective lenders fraudulent loan applications.

-5-

12.    It was further part of the scheme that in or about March 2005, defendant CHARLES WHITE caused a mortgage loan application to be submitted to a lender for the purchase of property located on South Normal Avenue in Chicago, Illinois in which defendant WHITE used the alias "Kevin Smith."

13.    It was further part of the scheme that defendant CHARLES WHITE prepared and caused to be prepared loan applications that fraudulently misrepresented that investors intended to occupy the property to be purchased as their primary residence, when, in truth and in fact, he knew they did not intend to occupy the property.

14.    It was further part of the scheme that in or about June 2005, defendant CHARLES WHITE caused a mortgage loan application to be submitted to a lender for the purchase of property located on West Race Avenue in Chicago, Illinois that fraudulently misrepresented the investor intended to occupy the property to be purchased as the investor's primary residence, when, in truth and in fact, Defendant WHITE knew that the investor did not intend to occupy the property.

15.    It was further part of the scheme that defendant CHARLES WHITE prepared and caused to be prepared loan applications that fraudulently represented the investors' employment history and assets.

16.    It was further part of the scheme that in or about December 2004, defendant CHARLES WHITE caused a mortgage loan application to be submitted to a lender for the purchase of property located on South Francisco Street in Chicago, Illinois that fraudulently

misrepresented that the investor maintained a bank account bearing account number XXXXXXX136 at Charter One Bank, when defendant WHITE knew, in truth and in fact, the account belonged to defendant WHITE.

17.    It was further part of the scheme that at times defendant CHARLES WHITE caused fictitious and fraudulent verifications of deposit, rent and employment forms, employment records, and/or tax forms to be prepared and submitted to lenders to verify defendant WHITE's fictitious and fraudulent loan application representations.

18.    It was further part of the scheme that in or about January 2005, defendant CHARLES WHITE caused fictitious investor tax returns to be included in the mortgage loan application materials submitted to a lender for the purchase of property located on Whipple Street in Chicago, Illinois.

19.    It was further part of the scheme that defendant CHARLES WHITE purchased cashier's checks bearing investors' names to be submitted as down payment contributions provided by investors for the purchase of property when, in truth and in fact, WHITE, and not EHNS's investors, contributed the down payment for the properties' purchase.

20.    It was further part of the scheme that on or about August 12, 2004, defendant CHARLES WHITE purchased a cashier's check to be submitted to a mortgage lender as an investor's down payment for the purchase of home located on South Kedvale Avenue in Chicago, Illinois, when defendant WHITE knew that, in truth and in fact, the investor was not contributing any money to the purchase of that home.

-7-

21.    It was further part of the scheme that defendant CHARLES WHITE caused Title Zone's closer to accept cashier's checks as investor down payments, when, in truth and in fact, those cashier's checks had not been provided by investors, but by defendant WHITE.

22.    It was further part of the scheme that defendant CHARLES WHITE caused Title Zone's closer to submit to lenders copies of cashier's checks represented to be investor down payments when, in truth and in fact, those cashier's checks had been provided by defendant WHITE.

23.    It was further part of the scheme that defendant CHARLES WHITE caused Title Zone's closer to submit real estate closing documents to be submitted to lenders that represented that down payments had been provided by investors when, in truth and in fact, those down payments were provided by defendant WHITE.

24.    It was further part of the scheme that defendant CHARLES WHITE caused Title Zone's closer to arrange for EHNS to receive payment from real estate transactions before defendant WHITE purchased the cashier's checks that were represented to be the investors' down payments for the same transactions.

25.    It was further part of the scheme that defendant CHARLES WHITE retained defendant NORTON HELTON to represent EHNS's clients at the sale of their homes to investors and that defendant WHITE arranged for defendant HELTON to be paid from the proceeds derived from those sales.

*Diamond Management*

26.    It was further part of the scheme that in or about 2004, defendant NORTON HELTON incorporated Diamond Management to offer the same type of "mortgage bailout" services then offered by EHNS.  Defendant HELTON modeled Diamond Management's mortgage bailout program on EHNS's program.

27.    It was further part of the scheme that defendant NORTON HELTON recruited investors to purchase homes owned by Diamond Management's clients and then assisted those investors in obtaining mortgage financing to purchase those homes.

28.    It was further part of the scheme that defendant NORTON HELTON purchased cashier's checks bearing investors' names to be submitted to lenders as down payment contributions provided by investors for the purchase of property when, in truth and in fact, Diamond Management's investors did not contribute money to the property they purchased.

*Defendant NORTON HELTON's Bankruptcy Fraud*

29.    It was further part of the scheme that defendant CHARLES WHITE caused EHNS representatives to tell EHNS's clients that they would need to eliminate their debt and repair their credit during the investment period of EHNS's mortgage bailout program. EHNS representatives encouraged EHNS's clients to repair their credit by filing for bankruptcy and referred them to defendant NORTON HELTON.

30.    It was further part of the scheme that defendant NORTON HELTON marketed Diamond Management's real estate bailout program and his subsequent bankruptcy

representation together.

31.    It was further part of the scheme that defendant NORTON HELTON caused bankruptcy petitions, schedules, and statements of financial affairs to be filed with the Bankruptcy Court for the Northern District of Illinois which concealed that the debtors had recently sold their homes in connection with EHNS's or Diamond Management's mortgage bailout programs. Defendant HELTON was well aware of these undisclosed sales as he had been present at and received payments from the transactions.

32.    It was further part of the scheme that defendant NORTON HELTON instructed debtors not to disclose the existence or details of the real estate transactions by which they sold their homes pursuant to EHNS's or Diamond Management's mortgage bailout programs in their Section 341 meeting of creditors.

33.    It was further part of the scheme that despite knowledge that debtors had participated in EHNS's or Diamond Management's mortgage bailout program and had sold their homes, defendant NORTON HELTON did not correct debtors who, in response to inquiries at the Section 341 meeting of creditors, falsely indicated that they had not recently sold property during the year preceding the date of their bankruptcy petition, when defendant HELTON knew that, in truth and in fact, they had sold their homes.

34.    It was further part of the scheme that by omitting any reference of debtors' recent sales of their homes in their statements of financial affairs, and by instructing debtors not to disclose those same sales at the Section 341 meeting of creditors, defendant NORTON

-10-

HELTON knowingly concealed debtors' potential estate assets from the bankruptcy trustee, the United States Trustee, and his debtor-clients' creditors. This concealment was intended to preclude the bankruptcy trustee, the United States Trustee, and debtors' creditors from seeking to recover as assets of the debtors' estate any proceeds derived from by the sale of the debtors' homes.

35.    It was further part of the scheme that defendants NORTON HELTON and CHARLES WHITE and others known and unknown to the grand jury, did misrepresent, conceal and hide and caused to be misrepresented, concealed and hidden acts done in furtherance of the scheme and the purpose of those acts.

36.    On or about August 11, 2004, at Chicago, in the Northern District of Illinois, Eastern Division,

CHARLES WHITE,

defendant herein, and others, known and unknown to the grand jury, for the purpose of executing the aforesaid scheme, and attempting to do so, knowingly did cause to be transmitted by means of a wire communication in interstate commerce from New York to Wisconsin, certain signs, sounds and signals, namely: a bank wire transfer of funds for a mortgage loan to purchase property located on South Kedvale Avenue in Chicago, Illinois;

In violation of Title 18, United States Code, Section 1343 and 2.

## COUNT TWO

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.  Paragraphs 1 through 35 of Count One are realleged as if fully restated herein.

2.  On or about November 15, 2004, at Chicago, in the Northern District of Illinois, Eastern Division,

CHARLES WHITE,

defendant herein, and others, known and unknown to the grand jury, for the purpose of executing the aforesaid scheme, and attempting to do so, knowingly did cause to be transmitted by means of a wire communication in interstate commerce from New York to Wisconsin, certain signs, sounds and signals, namely: a bank wire transfer of funds for a mortgage loan to purchase property located on Walnut Avenue in Country Club Hills, Illinois;

In violation of Title 18, United States Code, Section 1343 and 2.

## COUNT THREE

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.  Paragraphs 1 through 35 of Count One are realleged as if fully restated herein.

2.  On or about December 7, 2004, at Chicago, in the Northern District of Illinois, Eastern Division,

### CHARLES WHITE,

defendant herein, and others, known and unknown to the grand jury, for the purpose of executing the aforesaid scheme, and attempting to do so, knowingly did cause to be transmitted by means of a wire communication in interstate commerce from New York to Wisconsin, certain signs, sounds and signals, namely: a bank wire transfer of funds for a mortgage loan to purchase property located on South Lake Park Avenue in Chicago, Illinois;

In violation of Title 18, United States Code, Section 1343 and 2.

## COUNT FOUR

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 35 of Count One are realleged as if fully restated herein.

2.    On or about December 17, 2004, at Chicago, in the Northern District of Illinois, Eastern Division,

### CHARLES WHITE,

defendant herein, and others, known and unknown to the grand jury, for the purpose of executing the aforesaid scheme, and attempting to do so, knowingly did cause to be transmitted by means of a wire communication in interstate commerce from Ohio to Wisconsin, certain signs, sounds and signals, namely: a bank wire transfer of funds for a mortgage loan to purchase property located on South Francisco Street, in Chicago, Illinois;

In violation of Title 18, United States Code, Section 1343 and 2.

## COUNT FIVE

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 35 of Count One are realleged as if fully restated herein.

2.    On or about January 18, 2005, at Chicago, in the Northern District of Illinois, Eastern Division,

CHARLES WHITE,

defendant herein, and others, known and unknown to the grand jury, for the purpose of executing the aforesaid scheme, and attempting to do so, knowingly did cause to be transmitted by means of a wire communication in interstate commerce from New York to Wisconsin, certain signs, sounds and signals, namely: a bank wire transfer of funds for a mortgage loan to purchase property located on South Whipple Street in Chicago, Illinois;

In violation of Title 18, United States Code, Section 1343 and 2.

## COUNT SIX

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.     Paragraphs 1 through 35 of Count One are realleged as if fully restated herein.

2.     On or about March 25 2005, at Chicago, in the Northern District of Illinois, Eastern Division,

### CHARLES WHITE,

defendant herein, and others, known and unknown to the grand jury, for the purpose of executing the aforesaid scheme, and attempting to do so, knowingly did cause to be transmitted by means of a wire communication in interstate commerce from New York to Wisconsin, certain signs, sounds and signals, namely: a bank wire transfer of funds for a mortgage loan to purchase property located on South Normal Avenue in Chicago, Illinois;

In violation of Title 18, United States Code, Section 1343 and 2.

## COUNT SEVEN

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 35 of Count One are realleged as if fully restated herein.

2.    On or about July 1, 2005, at Chicago, in the Northern District of Illinois, Eastern Division,

CHARLES WHITE,

defendant herein, and others, known and unknown to the grand jury, for the purpose of executing the aforesaid scheme, and attempting to do so, knowingly did cause to be transmitted by means of a wire communication in interstate commerce from New York to Wisconsin, certain signs, sounds and signals, namely: a bank wire transfer of funds for a mortgage loan to purchase property located on W. Race Avenue in Chicago, Illinois;

In violation of Title 18, United States Code, Section 1343 and 2.

## COUNT EIGHT

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 35 of Count One are realleged as if fully restated herein.

2.    On or about February 16, 2004, at Chicago, in the Northern District of Illinois, Eastern Division,

### NORTON HELTON,

defendant herein, and others, known and unknown to the grand jury, for the purpose of executing the aforesaid scheme, and attempting to do so, knowingly did cause to be transmitted by means of a wire communication in interstate commerce from New York to Wisconsin, certain signs, sounds and signals, namely: a bank wire transfer of funds for a mortgage loan to purchase property located on South Manistee Avenue in Chicago, Illinois;

In violation of Title 18, United States Code, Section 1343 and 2.

## COUNT NINE

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraph 1 of Count One is realleged as if fully restated herein.

2.    Beginning no later than in or about August 2004 and continuing to in or about September 2005, in Chicago, in the Northern District of Illinois, Eastern Division,

### NORTON HELTON

defendant herein, together with persons known and unknown to the Grand Jury, devised and participated in a scheme or artifice to defraud creditors by means of materially false and fraudulent pretenses, representations, and material omissions, and for the purpose of executing that scheme and attempting to do so, caused Chapter 7 bankruptcy petitions to be filed with the U.S. Bankruptcy Court for the Northern District of Illinois.

3.    Paragraphs 3 through 31 of Count One are realleged as if fully restated herein.

4.    On or about August 24, 2004, at Chicago, in the Northern District of Illinois, Eastern Division,

### NORTON HELTON,

defendant herein, for the purpose of executing the aforesaid scheme to defraud and attempting to do so, caused to be filed a Voluntary Petition for Chapter 7 bankruptcy, specifically case *In re Victor H.*, # 04-31454, in the United States Bankruptcy Court for the Northern District of Illinois;

In violation of Title 18, United States Code, Sections 157(1) and 2.

## COUNT TEN

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.      Paragraphs 1 through 3 of Count Nine are realleged as if fully restated herein.

2.      On or about January 4, 2005, at Chicago, in the Northern District of Illinois, Eastern Division,

### NORTON HELTON,

defendant herein, for the purpose of executing the aforesaid scheme to defraud and attempting to do so, caused to be filed a Voluntary Petition for Chapter 7 bankruptcy, specifically case *In re Delores C.*, # 05-00145, in the United States Bankruptcy Court for the Northern District of Illinois;

## COUNT ELEVEN

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 3 of Count Nine are realleged as if fully restated herein.

2.    On or about January 27, 2005, at Chicago, in the Northern District of Illinois, Eastern Division,

NORTON HELTON,

defendant herein, for the purpose of executing the aforesaid scheme to defraud and attempting to do so, caused to be filed a Voluntary Petition for Chapter 7 bankruptcy, specifically case *In re Natalie V.*, # 05-02654, in the United States Bankruptcy Court for the Northern District of Illinois;

In violation of Title 18, United States Code, Sections 157(1) and 2.

## COUNT TWELVE

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 3 of Count Nine are realleged as if fully restated herein.

2.    On or about March 17, 2005, at Chicago, in the Northern District of Illinois, Eastern Division,

## NORTON HELTON,

defendant herein, for the purpose of executing the aforesaid scheme to defraud and attempting to do so, caused to be filed a Voluntary Petition for Chapter 7 bankruptcy, specifically case *In re Audrey J.*, # 05-09637, in the United States Bankruptcy Court for the Northern District of Illinois;

In violation of Title 18, United States Code, Sections 157(1) and 2.

## COUNT THIRTEEN

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 3 of Count Nine are realleged as if fully restated herein.

2.    On or about May 18, 2005, at Chicago, in the Northern District of Illinois, Eastern Division,

### NORTON HELTON,

defendant herein, for the purpose of executing the aforesaid scheme to defraud and attempting to do so, caused to be filed a Voluntary Petition for Chapter 7 bankruptcy, specifically case *In re Chris and Loretta H.*, # 05-19843, in the United States Bankruptcy Court for the Northern District of Illinois;

In violation of Title 18, United States Code, Sections 157(1) and 2.

## COUNT FOURTEEN

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 3 of Count Nine are realleged as if fully restated herein.

2.    On or about May 18, 2005, at Chicago, in the Northern District of Illinois, Eastern Division,

NORTON HELTON,

defendant herein, for the purpose of executing the aforesaid scheme to defraud and attempting to do so, caused to be filed a Voluntary Petition for Chapter 7 bankruptcy, specifically case *In re Patricia R.*, # 05-19841, in the United States Bankruptcy Court for the Northern District of Illinois;

In violation of Title 18, United States Code, Sections 157(1) and 2.

## COUNT FIFTEEN

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.      Paragraphs 1 through 3 of Count Nine are realleged as if fully restated herein.

2.      On or about June 1, 2005, at Chicago, in the Northern District of Illinois, Eastern Division,

### NORTON HELTON,

defendant herein, for the purpose of executing the aforesaid scheme to defraud and attempting to do so, caused to be filed a Voluntary Petition for Chapter 7 bankruptcy, specifically case *In re Kelvin M.*, # 05-21706, in the United States Bankruptcy Court for the Northern District of Illinois;

In violation of Title 18, United States Code, Sections 157(1) and 2.

## <u>COUNT SIXTEEN</u>

The SPECIAL MARCH 2007 GRAND JURY further charges:

3.      Paragraphs 1 through 3 of Count Nine are realleged as if fully restated herein.

4.      On or about September 16, 2005, at Chicago, in the Northern District of Illinois, Eastern Division,

NORTON HELTON,

defendant herein, for the purpose of executing the aforesaid scheme to defraud and attempting to do so, caused to be filed a Voluntary Petition for Chapter 7 bankruptcy, specifically case *In re Marian C.*, # 05-38107, in the United States Bankruptcy Court for the Northern District of Illinois;

In violation of Title 18, United States Code, Sections 157(1) and 2.

## COUNT SEVENTEEN

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.     Paragraphs 1 through 3 of Count Nine are realleged as if fully restated herein.

2.     On or about September 16, 2005, at Chicago, in the Northern District of Illinois, Eastern Division,

### NORTON HELTON,

defendant herein, for the purpose of executing the aforesaid scheme to defraud and attempting to do so, caused to be filed a Voluntary Petition for Chapter 7 bankruptcy, specifically case *In re Franchesca W.*, # 05-38104, in the United States Bankruptcy Court for the Northern District of Illinois;

In violation of Title 18, United States Code, Sections 157(1) and 2.

A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES ATTORNEY

-27-